KATHIE A. STABILE *vs.* GERALD A. STABILE, JR.

No. 99-P-1360.

Essex. December 14, 2001. - September 6, 2002.

Present: RAPOZA, KAPLAN, & BERRY, JJ.

*Divorce and Separation,* Modification of judgment. *Contempt. Contract,* Construction of contract.

A modified divorce decree that obligated the husband to use his best efforts to maintain a college or trust fund for each of his minor children, and that mandated that the husband contribute $10,000 annually to each fund, created no ambiguity as to the husband's duties and obligations regarding the creation of such funds. [725-729]

COMPLAINT for divorce filed in the Essex Division of the Probate and Family Court Department on September 22, 1993.

A complaint for contempt, filed on July 27, 1998, was heard by *John P. Cronin,* J.

*Kathie A. Stabile,* pro se.

*Martin F. Kane, II,* for Gerald A. Stabile, Jr.

RAPOZA, J. We are asked to interpret a portion of the parties' modified divorce decree, which provides that the former husband maintain a college fund for each of the minor children. We vacate the judgment below that the husband was not in contempt of the modified decree and remand to the trial court for further action consistent with this opinion.

*Background.* The parties, Kathie Stabile and Gerald Stabile, Jr., were divorced on December 10, 1993. At a later point, they agreed to a modification of the divorce decree by the addition of terms contained in a stipulation signed by them and their attorneys. On December 18, 1996, the Probate and Family Court entered a modified judgment of divorce that incorporated by reference the signed stipulation, which read, in pertinent part, as follows:

"Beginning in 1997, the Defendant [Gerald] *will use his best efforts to*[1] maintain a college and/or trust fund for each of the parties' minor children, and shall contribute $10,000.00 annually to each fund by December 31st of that year" (emphasis added).

On July 27, 1998, Kathie filed a contempt complaint alleging, among other things, that Gerald had failed to maintain a fund for the future education of either minor child as called for by this provision. At the contempt hearing,[2] Kathie asserted that Gerald's income had more than doubled since the modified order entered, but that he had nonetheless failed to set up any type of fund for their children's higher education. Gerald responded that he had hoped to exercise certain stock options, which ultimately failed to materialize, to establish those funds. He acknowledged that he had not yet established a college fund for either child.

The judge concluded that Gerald was not in contempt, stating that the terms of the stipulation relating to the maintenance of college funds were not "clear and unequivocal as to the duties and obligations of the defendant." Consequently, Kathie "did not meet her burden of proving a clear and undoubted violation of a clear and unequivocal order of" the court. The court subsequently denied Kathie's motion for reconsideration and clarification, in which she asked the court to specify how the contested provision was not "clear and unequivocal." This appeal followed.

*Discussion.* Kathie asserts on appeal that the provision requiring Gerald to maintain college funds for each of their minor children was neither unclear nor equivocal. Moreover, she contends that Gerald made no effort whatsoever to comply with its terms despite his obligation to do so. Gerald, on the other hand, claims that his obligations are unclear, and the order ambiguous, due to the substitution of the phrase "will use his best efforts to" for the word "shall" with respect to the

---

[1]The term "shall" was crossed out and the words "will use his best efforts to" were handwritten into the otherwise typed "Stipulation of the Parties for Judgment." It is uncontroverted that the substitution was done at Gerald's request.

[2]The parties agreed to forgo an evidentiary hearing and proceeded, instead, on representations of counsel.

maintenance of college funds. Specifically, he claims that an inconsistency exists between the requirement that he *shall* pay $10,000 annually into each fund and the provision that he use his "best efforts" to maintain the funds.

We discern no ambiguity or inconsistency here. Looking no further than the express language of the parties' stipulation adopted by the court, we conclude that the command of the modified divorce decree was sufficiently clear and unequivocal to support a claim for contempt against Gerald. The modified order requires Gerald not only to use his best efforts to maintain college funds for each of the parties' minor children, but also to contribute $10,000 annually to each child's fund. In order to discharge those responsibilities, he is necessarily under an obligation first to establish college funds for each child.

For civil contempt to be found, "there must be a clear and undoubted disobedience of a clear and unequivocal command." *Sax* v. *Sax*, 53 Mass. App. Ct. 765, 771 (2002), quoting from *United Factory Outlet, Inc.* v. *Jay's Stores, Inc.*, 361 Mass. 35, 36 (1972). The command must be clear and unequivocal to the extent that it can be understood by the person subject to it "without resort to the evidence at trial." *Inspector of Bldgs. of Provincetown* v. *Eder*, 11 Mass. App. Ct. 1011, 1011 (1981). An ambiguity does not arise merely because an order, otherwise clear, may require "some legal interpretation." *Sax* v. *Sax, supra* at 772, quoting from *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 567 (1997).

Indefinite and uncertain language cannot support a complaint for contempt because of a lack of fair notice to the person subject to the order, and because "ambiguity carries with it the potential for becoming 'an instrument of [judicial] severity.' " *Sax* v. *Sax, supra*, quoting from *Labor Relations Commn.* v. *Boston Teachers Union, Local 66*, 374 Mass. 79, 89 (1977). Consequently, we ordinarily resolve ambiguities in divorce decrees in favor of the person charged with contempt. *Sax* v. *Sax, supra*, citing *Cohen* v. *Murphy*, 368 Mass. 144, 147 (1975), and *Inspector of Bldgs. of Provincetown* v. *Eder, supra*.

While vague or ambiguous language in a judicial decree cannot constitute a "clear and unequivocal command," *Sax* v. *Sax, supra* at 771, a party's self-serving characterization of a provi-

sion as "ambiguous" does not make it so. "[A]n ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other." *Lumbermens Mut. Cas. Co.* v. *Offices Unlimited, Inc.*, 419 Mass. 462, 466 (1995). See *Mayer* v. *Medical Malpractice Joint Underwriting Assn. of Mass.*, 40 Mass. App. Ct. 266, 269 (1996) (party's interpretation of insurance policy language "appear[ed] to represent a strained attempt to create ambiguity where none exists").

Gerald claims that an ambiguity was injected into the stipulation by the replacement of the original typed word "shall" (maintain a college and/or trust fund) with the handwritten phrase "will use his best efforts to" (maintain a college and/or trust fund). He asserts that the removal of the command, "shall," and the insertion of the more permissive words, "will use his best efforts to," render his duties under the order unclear and, at best, discretionary rather than mandatory. Consequently, he argues, the order does not require that he establish such funds, but merely that he use his "best efforts" to do so.

Even if the order were to require only that Gerald use his "best efforts" both to establish and maintain college funds, there is no resulting ambiguity regarding his duties.[3] As this court has stated, we "assume a construction of 'best efforts' in the natural sense of the words as requiring that the party put its muscles to work to perform with full energy and fairness the relevant express promises and reasonable implications therefrom." *Macksey* v. *Egan*, 36 Mass. App. Ct. 463, 472 (1994). See *Brewster* v. *Dukakis*, 675 F.2d 1, 4 (1st Cir. 1982) (upholding provision in consent decree requiring state officials to "use their best efforts to insure . . . full and timely financing" before making cuts in services subject to that decree); *Triple-A Baseball Club Assocs.* v. *Northeastern Baseball, Inc.*, 832 F.2d 214, 225-226, 228 (1st Cir. 1987), cert. denied, 485

---

[3]At the time of the filing of the complaint for contempt, the modified judgment had been in effect for over a year and one-half. If Gerald was uncertain about his obligations under the agreement, the proper remedy would have been to bring an action requesting clarification. See *Judge Rotenberg Educ. Ctr., Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 1)*, 424 Mass. 430, 451 (1997), citing *Labor Relations Commn.* v. *Boston Teachers Union, Local 66*, 374 Mass. 79, 91 (1977).

U.S. 935 (1988) ("best efforts" is the equivalent of acting in good faith, although it does not mean every conceivable effort).[4] The term "best efforts" thus helps to delineate, rather than to obscure, Gerald's responsibilities under the order.

Gerald also claims to espy an ambiguity when the requirement that he use his "best efforts" to maintain college funds is juxtaposed with the provision that he "*shall* contribute $10,000.00 annually to each fund" (emphasis supplied). Yet there is an inconsistency between these provisions only if they are read as suggested by Gerald: that he must contribute $10,000 annually to a fund that he may choose not to establish. The command that Gerald contribute $10,000 annually presupposes, at a minimum, the existence of the college funds. As we have noted, the specification in the order that he use his "best efforts" to maintain such funds does not relieve him of his duty to provide college funds for the minor children. Rather, the phrase clearly and unequivocally indicates the measure of exertion that he is to apply to the task at hand. The provision that he use his "best efforts" comprehends the establishment of such funds. Rather than give rise to an ambiguity, the requirement that he deposit $10,000 annually into each account further confirms that he is to establish such funds in the exercise of his "best efforts."

We conclude that the terms to which Kathie and Gerald stipulated in 1996 were clear and unambiguous when they agreed to them, and that they are no less so now. The modified order clearly and unequivocally requires Gerald to establish a "college and/or trust fund" for each of his minor children and to contribute $10,000 to each fund annually while maintaining each account with the use of his "best efforts."

Accordingly, we conclude that Kathie satisfied her burden of proof that the provision in issue was "clear and unequivocal," and we vacate the judgment below. We also remand the matter for a determination whether or not there was a "clear and

---

[4]In any event, the provision that Gerald use his "best efforts" relative to maintaining college funds for his children suggests that, at a minimum, he will exert more than "no effort." As we state below, we leave it to the trial judge to determine whether Gerald's failure to establish college funds constituted his "best efforts."

undoubted disobedience" of the modified decree and of what relief, if any, shall be granted.

*So ordered.*