NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-173

BUILDING INSPECTOR OF PALMER[1]

vs.

PALMER MOTORSPORTS PARK, LLC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant corporation, Palmer Motorsports Park, LLC (PMP), appeals from a judgment of civil contempt. After a trial, a Land Court judge found that PMP had failed to comply with an order included in a judgment dated January 14, 2020. On appeal, PMP asserts that the judge's order was ambiguous and, even if the order was clear and unequivocal, PMP's noncompliance should be excused under the doctrine of impossibility. We affirm.

"[A] civil contempt finding [must] be supported by clear and convincing evidence of disobedience of a clear and unequivocal command." Birchall, petitioner, 454 Mass. 837, 853

---

[1] Bonita J. Weeks, the named plaintiff, was sued in her capacity as building inspector and zoning enforcement officer of the Town of Palmer.

(2009).  The order at issue, reproduced in the margin,[2] was clear and unequivocal.  It required PMP, "by no later than 45 days from the entry of this Judgment," to take two actions:  (a) to implement certain noise mitigation measures and (b) to provide the town with "actual noise readings" from certain locations so the town could assess the efficacy of the mitigation measures. We discern no ambiguity in the language of the order concerning the timing of the two actions required of PMP.  Plainly, both were to occur within forty-five days.  PMP's reading of the order -- that the forty-five day deadline applied only to implementation of the mitigation measures, and that there was no clear time constraint on its obligation to provide noise readings "following" implementation -- is a strained and unnatural interpretation of the order's clear command.  "[A]

---

[2] "[T]he Court . . . ORDERS PMP, by no later than 45 days from the entry of this Judgment, to (a) implement proper mitigation measures so as to remedy all of the noise conditions that the evidence at the trial of this matter and/or the study of the Palmer Motorsports Park (the 'Park') prepared by Resource Systems Group, Inc., dated November 1, 2018 shows are not in compliance with Condition #10 [of a Special Permit issued in December 2007]; and (b) following PMP's implementation of such measures, provide to the Planning Board of the Town of Palmer, for professional review at PMP's expense, actual noise readings from the same locations as the 'original study' described in Condition #10.  In order to fulfill the requirements of subparagraph (b) . . . , such actual noise readings and corresponding data must be in such form as to allow a professional acoustical engineer engaged by the Board to determine whether noise from the Park, after PMP's implementation of mitigation measures, meets the requirements of Condition #10."

party's self-serving characterization of a provision as 'ambiguous' does not make it so." Stabile v. Stabile, 55 Mass. App. Ct. 724, 726-727 (2002).

Although the order clearly required PMP to implement the noise mitigation measures and to provide the required data within forty-five days of January 14, 2020, that is, by February 28, 2020,[3] PMP argues that it was impossible to comply with the order because no "high-sound" events were scheduled during the off-season months of January and February. Moreover, PMP's ability to schedule an event to generate the required noise level data was further hampered by the outbreak of the COVID-19 pandemic.[4]

It was not until July 16, 2020, that PMP held the first event that would generate the required data. PMP contracted with an entity called Cross-Spectrum Acoustics (CSA) to take the noise readings. Because of equipment problems, CSA was unable to gather data from two of the four required monitoring locations. PMP held a second event on August 8, 2020, at which CSA obtained data from all four required locations. PMP did not provide the partial July 18 noise readings or the complete

---

[3] In fact, PMP had already complied with the first part of the order before it was issued. Its only remaining obligation was to provide noise readings by February 28, 2020.

[4] "On March 10, 2020, the Governor declared a state of emergency throughout the Commonwealth in response to the spread of COVID-19." Christie v. Commonwealth, 484 Mass. 397, 398 (2020).

August 8 readings to the town.  On September 22, 2020, exactly forty-five days after the August 8 event, the plaintiff filed the contempt complaint.

"Noncompliance with a court order may be excused where compliance becomes impossible, but the burden of proving impossibility lies with the alleged contemnor."  Commonwealth v. One 1987 Ford Econoline Van, 413 Mass. 407, 412 (1992).  The judge rejected PMP's impossibility argument.  He found that PMP's inability to comply with the judgment ended with the event held on July 16, but that PMP withheld the partial data from that event.  The judge also found that PMP did not produce the data from the August 8 event until after it received the contempt complaint.  The judge concluded, "Even if the 45-day clock started on July 16, 2020 (a generous reading of the Judgment), PMP was obligated either to provide to the Town testing data by August 31, 2020, or seek modification of the Judgment."

We review the judge's underlying conclusions of law de novo, the findings of fact for clear error, and the ultimate finding of contempt for abuse of discretion.  See Martinez v. Lynn Hous. Auth., 94 Mass. App. Ct. 702, 705 (2019); Commercial Wharf E. Condominium Ass'n v. Boston Boat Basin, LLC, 93 Mass. App. Ct. 523, 532 (2018).  We discern no basis to disturb the contempt judgment.

4

PMP argues that it was unable to provide the noise readings to the town because the data was in the hands of its contractor, CSA. Perhaps, as PMP argues, the plaintiff did not introduce any evidence to contradict the track owner's testimony that he mailed the noise readings to the town as soon as he received them from CSA. But the burden was on PMP to show that it was "reasonably diligent and energetic in attempting to accomplish what was ordered" (citations omitted). One 1987 Ford Econoline Van, 413 Mass. at 412. PMP presented no evidence that the data it was required, by court order, to produce to the town was somehow inaccessible, or that PMP was at all diligent or energetic in pressing CSA to provide that data.

Finally, there is no merit to PMP's claim that the plaintiff was required to show willful or intentional disobedience. See United Factory Outlet, Inc. v. Jay's Stores, Inc., 361 Mass. 35, 37 (1972) (to hold corporation in civil contempt "it is not necessary to show that there was wilful disobedience or intention to violate the order. It is enough to establish that persons acting for the corporation were responsible for acts or inaction which in fact constituted a

violation").

                                    Judgment of contempt
                                      affirmed.

                                    By the Court (Rubin,
                                      Massing & D'Angelo, JJ.[5]),

                                    *Joseph F. Stanton*

                                    Clerk


Entered:   February 17, 2023.

---

[5] The panelists are listed in order of seniority.

6