Thomas J. FARQUHAR, Appellant,

v.

ALASKA NATIONAL INSURANCE
COMPANY, Appellee.

No. S–9485.

Supreme Court of Alaska.

April 6, 2001.

Michael R. Wirschem, Houston & Houston, Anchorage, for Appellant.

Roger F. Holmes, Biss & Holmes, Anchorage, for Appellee.

Before FABE, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

· FABE, Chief Justice.

### I. INTRODUCTION

Thomas Farquhar was badly injured in a traffic accident with a driver for Industrial Boiler and Controls, Inc. He settled with Industrial Boiler's insurer, Alaska National Insurance Company (ANIC), for Industrial Boiler's policy limit of one million dollars. Farquhar claims that ANIC should be liable for prejudgment interest on the settlement, although such liability would bring ANIC's total payment above its policy limit of one million dollars. We conclude that ANIC's contract did not oblige it to pay prejudgment interest beyond the policy limit. Because Farquhar raises public policy arguments that we rejected in the 1979 case *Guin v. Ha*,[1] the principle of stare decisis precludes a different outcome in this case. Therefore, ANIC is not liable for prejudgment interest.

### II. FACTS AND PROCEEDINGS

In December 1996 a vehicle owned by Industrial Boiler collided with another car, veered into oncoming traffic, and struck the vehicle driven by Thomas Farquhar. Farquhar suffered serious head injuries from the collision and was rendered virtually unemployable. The parties do not dispute Industrial Boiler's liability for the accident.

Industrial Boiler was insured by ANIC for up to one million dollars; apparently it had no other liability insurance coverage. In October 1998 Farquhar tendered a demand to ANIC for the liability policy limit, applicable Rule 82 attorney's fees,· and unspecified interest. The parties reached an agreement, formalized in a release· dated November 17, 1998. ANIC agreed to pay the one million dollar policy limit and attorney's fees of $102,500. Farquhar released ANIC and Industrial Boiler from all further liability, with the exception of prejudgment interest. Farquhar and ANIC agreed to litigate the question of whether the insurance company owed Farquhar prejudgment interest in excess of its one million dollar policy limit.

Farquhar filed a complaint for declaratory judgment on the issue of prejudgment interest in May 1999. ANIC answered the complaint, and later moved for summary judgment. Farquhar opposed the motion and cross-moved for summary judgment in his own favor. After oral argument on these motions, Superior Court Judge Sen K. Tan granted summary judgment for ANIC and dismissed Farquhar's case with prejudice. Farquhar now appeals.

### III. STANDARD OF REVIEW

■ Summary judgment is appropriate only if there is no genuine issue of material fact, and the moving party is entitled to ·judgment as a matter of law.[2] The parties do not dispute any factual issues. The questions of contract and statute interpretation and public policy raised in this case are issues of law, which we review de novo.[3]

### IV. DISCUSSION

In *Guin v. Ha*, we established two grounds for holding an insurer liable for prejudgment interest: (1) if the insurer contractually assumes liability by the terms of its policy with the insured, or (2) if public policy requires liability despite the language of the contract.[4] Farquhar argues that ANIC is liable on both grounds.

---

**1.** 591 P.2d 1281 (Alaska 1979).

**2.** *See Estate of Arrowwood v. State*, 894 P.2d 642, 644 n. 2 (Alaska 1995).

**3.** *See Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**4.** *See id.* at 1284.

A. *ANIC Is Not Liable for Prejudgment Interest Under the Terms of its Policy with Industrial Boiler.*

1. *The supplementary payment provisions*

ANIC's contract with Industrial Boiler provides:

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

This provision is subject to the one million dollar policy limit.

■ A supplementary payments provision of the contract states that ANIC will make payments beyond the one million dollar policy limit for:

(5) All costs taxed against the "insured" in any "suit" we defend.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

■ In construing insurance policies, we do not strictly adhere to traditional principles of contract interpretation; instead, we try to effectuate the reasonable expectations of lay parties.[5] This flexible approach is appropriate regardless of whether the policy language is ambiguous.[6] However, this approach "is not to be used as an instrument for ignoring or rewriting insurance contracts."[7]

The contractual provisions at issue in this case resemble the provisions that we interpreted in *Hughes v. Harrelson*[8] and *Guin v. Ha*.[9] In both cases, we found that the contract language did not require prejudgment interest payments in excess of the policy limit. The *Hughes* provision is particularly similar to the provision in this case. In *Hughes*, the insurer agreed to pay

[i]nterest on damages awarded in any suit we defend accruing after judgment is entered and before we have paid, offered to pay, or deposited in court that portion of the judgment which is not more than our limit of liability.[10]

We draw on parallels with the *Hughes* contract language in rejecting Farquhar's interpretation of the ANIC contract.

Farquhar argues that under the express language of the supplementary payments provision, ANIC is obliged to pay prejudgment interest beyond the one million dollar policy limit. First, he claims that the provision for payment of "all interest ... that accrues after entry of the judgment" includes prejudgment interest, because prejudgment interest cannot be calculated until after a judgment, and therefore does not accrue until that time. This interpretation is arguably supported by the plain meaning of "accrue"—*Webster's* first definition of the word is "to come into existence as an enforceable claim."[11] However, because Farquhar's interpretation would render superfluous the policy's phrase "after entry of the judgment," it seems more likely that "accrue" in the contract means "to be periodically accumulat-

---

5. *See id.* at 1284–85 (citing *Stordahl v. Government Employees Ins. Co.*, 564 P.2d 63, 65–66 (Alaska 1977)).

6. *See Guin*, 591 P.2d at 1285.

7. *Id.*

8. 844 P.2d 1106, 1106 n. 1 (Alaska 1993). Although *Hughes* ultimately required that the insurer pay for prejudgment interest, we found that "nothing *in [the] insurance policy* requires the payment of prejudgment interest." *Id.* at 1106 (emphasis added).

9. 591 P.2d at 1285.

10. 844 P.2d at 1107 n. 1. The contract in *Guin v. Ha* did not explicitly mention interest, but provided that "the liability of the Underwriters hereunder for damages shall not exceed the limit of liability set out in the Schedule ... except that, subject to the provisions contained in Paragraph 3, the Underwriters will pay the costs and expenses incurred in the defense of any claim or suit." *Guin*, 591 P.2d at 1285. We determined that prejudgment interest was not included in the costs and expenses of defense, *id.* at 1285–86, but that the contract implicitly covered postjudgment interest. *Id.* at 1287 nn. 13, 15.

11. *Webster's Third New International Dictionary* 13 (3d ed.1966).

ed in the process of time"—*Webster's* third definition.[12] This interpretation is consistent with our conclusion, in *Hughes,* that a provision which covered "interest ... accruing after judgment" excluded prejudgment interest.[13]

Second, Farquhar argues that the second clause of the same provision—stating that "our duty to pay interest ends when we have paid ... the part of the judgment that is within our Limit of Insurance"—mandates payment of prejudgment interest, because the clause does not qualify or limit ANIC's "duty to pay." A straightforward reading of provision (6) refutes this claim. The first clause of provision (6) establishes that· ANIC's "duty" is only to pay "[a]ll interest ... *that accrues after entry of the judgment.*" (Emphasis added.)

Farquhar further argues that a lay reader would not understand ANIC's policy as excluding payment of prejudgment interest. Because ANIC did not expressly exclude such payments, he argues, the policy is unclear and Industrial Boiler could reasonably have expected the payments to be covered. Industrial Boiler's confusion is particularly likely, he says, because the one million dollar "limit" was in fact susceptible to increase by Rule 82 attorney's fees. These arguments fail. Both the costs of defending a lawsuit and the interest accruing *after* an entry of judgment are expenses specifically listed in the policy's supplementary payments provision. Farquhar's proposed reading would infer additional coverage for *any* expense not expressly excluded—a result that would not be within the reasonable reader's expectations. Moreover, we also found that the contractual provisions in *Guin* and *Hughes* excluded insurer liability for prejudgment in-

terest, although those provisions also failed explicitly to state such an exclusion.[14]

*2. The term "policy limit"*

■ ANIC is obliged under the contract to pay damages, costs, and expenses up to its policy limit. Farquhar argues that under our decisions in *State Farm Mutual Automobile Insurance Co. v. Harrington*[15] and *Schultz v. Travelers Indemnity Co.,*[16] the "policy limit" must be construed to include the one million dollar facial limit, Rule 82 attorney's fees, and $195,040.26 in prejudgment interest. ANIC disagrees, claiming that the cited decisions "went no further than to say 'policy limits' means that which the insurer would have to pay if it went to trial." ANIC's interpretation is correct.

In *Harrington,* the parties stipulated that State Farm would pay the plaintiff "policy limits," as defined by this court. We determined that "policy limits" are "what an insurance company would have to pay under its policy if it went to trial and received an adverse verdict."[17] Because we found that the *Harrington* policy *did* by its contractual terms cover prejudgment interest, an award of the policy limit in that case included such interest.[18]

In *Schultz,* we followed the same rule, stating that "[i]n determining what constitutes the maximum limits of insurance coverage, i.e., policy limits, it is necessary for the court to review the contractual obligations undertaken by the insurer in the insurance policy in question in light of the applicable statutes, regulations and court opinions."[19] In that case, the disputed policy apparently did not cover, and the plaintiffs did not claim, prejudgment interest. We found that "policy

12. *Id.*

13. *Hughes,* 844 P.2d at 1106 n. 1.

14. *See Hughes,* 844 P.2d at 1106; *Guin,* 591 P.2d at 1285–86.

15. 918 P.2d 1022 (Alaska 1996).

16. 754 P.2d 265 (Alaska 1988).

17. *Harrington,* 918 P.2d at 1026 (quoting *Tucker v. United Servs. Auto. Ass'n,* 827 P.2d 440, 441 n. 3 (Alaska 1992)).

18. *Harrington,* 918 P.2d at 1025–26. The policy in *Harrington* covered prejudgment interest for liabilities incurred by the insured, but did not cover prejudgment interest under its uninsured motorist provisions. Drawing on AS 21.89.020(c)(1), we concluded that the liabilities provision applied to the whole policy, and that the entire policy therefore covered prejudgment interest. *Id.* at 1024–26.

19. *Schultz,* 754 P.2d at 267.

limits" meant the facial limit of the policy, plus Rule 82 attorney's fees.[20]

Farquhar also suggests that his pre-judgment interest should be calculated based on a projected three million dollar court verdict rather than the one million dollar insurance settlement figure. In *Harrington,* we noted that the insured was entitled to pre-judgment interest based on the amount actually paid by the insurance company: the facial limit of the policy plus attorney's fees.[21] Farquhar offers no reason to depart from this.

### B. *ANIC Is Not Liable for Prejudgment Interest Based on Public Policy.*

In *Guin v. Ha,* we held that a court may override the terms of an insurance contract and order an insurer to pay prejudgment interest if public policy so requires.[22] However, we conclude that public policy does not require that ANIC be liable for prejudgment interest in excess of its policy limit.

#### 1. *Alaska statutes do not create a policy preference for insurer liability in this case.*

In *Hughes v. Harrelson,* we drew on *Guin*'s public policy provision, finding that two statutory provisions "convince[d us] that public policy must intervene." [23]

The plaintiff in *Hughes* was injured by a motorist with an insurance policy limit

of $50,000, the statutory minimum under AS 28.20.440(b) and AS 28.22.101(d).[24] Alaska Statute 28.22.101(d) provides in part:

> A motor vehicle liability policy must provide coverage in the United States or Canada, subject to limits exclusive of interest and costs, with respect to each vehicle, as follows:
>
> (1) $50,000 because of bodily injury to or death of one person in one accident.

Alaska Statute 28.20.440(b) restates the requirement, using nearly identical language.[25] After considering the language of the statutes, we held that "an insurer must pay prejudgment interest on the minimum policy limits established in AS 28.20.440(b) and AS 28.22.101(d)." [26]

Farquhar argues that the "subject to limits exclusive of interest and costs" language of AS 28.22.101(d) [27] applies to all insurance policies, not just those with the $50,000 statutory minimum policy limit. As he interprets the statute, AS 28.22.101(d) requires that *all* policies (1) provide coverage in the United States or Canada, (2) be subject to a limit exclusive of interest and costs, and (3) provide coverage with respect to each vehicle. Separately, AS 28.22.101(d)(1) requires that all policies provide a minimum of $50,000 coverage. If the requirements of subsection (d) applied only to policies with a $50,000 limit, he argues, then drivers with more than minimum coverage would be exempt from the "U.S. and Canada" language and the

---

20. *See id.* Prejudgment interest was relevant in *Schultz,* but only as an element in calculating attorney's fees. *Id.*

21. 918 P.2d at 1026.

22. 591 P.2d 1281, 1284 (Alaska 1979).

23. 844 P.2d 1106, 1107 (Alaska 1993).

24. *See id.* at 1106.

25. AS 28.20.440(b) provides in part:

> The owner's policy of liability insurance must
>
> . . . .
>
> (2) insure the person named and every other person using the vehicle with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the vehicle within the United States or Canada, subject to limits ex-

clusive of interest and costs, with respect to each vehicle, as follows: $50,000 because of bodily injury to or death of one person.

26. *Hughes,* 844 P.2d at 1108.

27. Farquhar's argument applies to AS 28.22.101(d) but not to AS 28.20.440(b). The statute explicitly excludes coverage over $50,000 from AS 28.20.440(b)'s requirements. AS 28.20.440(g) provides:

> A policy that grants the coverage required for a motor vehicle liability policy may also grant lawful coverage in excess of or in addition to the coverage specified for a policy and the excess or additional coverage is not subject to the provisions of this chapter. With respect to a policy that grants excess or additional coverage the term "motor vehicle liability policy" applies only to that part of the coverage that is required by this section.

"with respect to each vehicle" language, as well as the "exclusive of interest and costs" language.

■ We reject this reading of the statute. We interpret the qualifications listed in AS 28.22.101(d) as applying only to the $50,000 coverage required by subsection (d)(1). Thus, the statute does not prevent a motorist from purchasing additional coverage for only one of several vehicles, or coverage valid in Mexico but not the United States or Canada, or coverage that excludes prejudgment interest, so long as the *first* $50,000 of coverage complies with the requirements of AS 28.22.101(d). Our decision in *Hughes* strongly supports this reading. Although the holding in that case concerned a policy for the $50,000 minimum,[28] we stated in dicta that "[t]o effectuate the language of the statutes, *if the policy limit is the statutory minimum,* an insurer must pay prejudgment interest in addition to the policy limit." [29] We conclude that the statutes do not require insurers to pay prejudgment interest on damages above $50,000.[30]

Farquhar argues in the alternative that under AS 28.20.440(b) and AS 28.22.101(d), ANIC must pay the policy limit of one million dollars, plus the prejudgment interest on $50,000. As he interprets the statutes, they create a right to interest on $50,000 above and beyond any policy limit, even if the limit exceeds the sum of $50,000 and the interest on $50,000. We reject this interpretation. Alaska Statutes 28.20.440(b) and 28.22.101(d) protect collision victims by guaranteeing compensation of $50,000 plus interest. They do not require additional payments if the victim's total award or settlement already covers this amount.

2. *Stare decisis precludes reconsideration of policy issues decided in Guin v. Ha.*

In *Guin v. Ha,* we stated that public policy could potentially require holding an insurer liable for prejudgment interest in excess of the policy limit.[31] However, we concluded that the policy arguments advanced by the parties in that case favored both sides equally, and therefore did not justify overriding the contract.[32]

In *Guin,* we considered three policy arguments in favor of holding insurers liable for prejudgment interest in excess of the policy limit. First, the plaintiff argued that economic fairness required insurer liability for prejudgment interest because insured defendants would otherwise have to pay for interest actually retained by their insurers.[33] We found that such a concern was not sufficient grounds for restructuring the contractual relationship between insured and insurer.[34] Second, we rejected the argument that insurers should bear the burden of prejudgment claims as an incentive to early settlement.[35] We expressed concern about burdening the insurer with a risk it had not contractually assumed.[36] Finally, we rejected the argument that insureds were "at the mercy of the dilatory or uncooperative insurance company." [37] Insureds have a cause of action for bad faith against insurers if the insurers do not accept reasonable settlement offers in a prompt fashion.[38]

We held in *State v. United Cook Inlet Drift Ass'n* that "the judicial doctrine of stare decisis accords the prior holdings of the highest courts of this State precedential value while still permitting the reconsideration

---

**28.** *See Hughes,* 844 P.2d at 1106.

**29.** *Id.* at 1107 (emphasis added).

**30.** Thus, on a policy with a limit of $50,001, an insurer must pay all prejudgment interest on the first $50,000, but need not pay interest on the last dollar if such a payment would exceed the policy limit.

**31.** 591 P.2d at 1284.

**32.** *See id.* at 1291.

**33.** *See id.* at 1290.

**34.** *See id.*

**35.** *See id.* at 1290–91.

**36.** *See id.*

**37.** *Id.* at 1291.

**38.** *See id.*

of legal issues when conditions warrant."[39] Farquhar has not advanced compelling arguments to show that conditions warrant departure from *Guin*'s rule. Nor has he raised policy considerations not already considered in *Guin*. Although he argues that new issues arise in this case because it concerns auto insurance, rather than the medical malpractice insurance at issue in *Guin*, this difference cannot be the basis for a principled policy distinction. And Farquhar's argument that public policy has been violated because he was insufficiently compensated for his injuries does not pertain to insurer liability for interest. Moreover, the legislature has already determined the appropriate level for minimum coverage.[40] We decline to reverse our holding in *Guin*. We note that *Guin*'s conclusion is consistent with holdings in a number of other jurisdictions,[41] and forms the basis of long-settled expectations of insurers in Alaska.

## V. CONCLUSION

ANIC's contract did not provide that the insurance company would pay prejudgment interest in excess of the policy limit. Under *Guin*, public policy does not require that ANIC be held liable for such payments. Therefore, we AFFIRM the decision of the superior court.

MATTHEWS, Justice, not participating.

---

**39.** 895 P.2d 947, 953 (Alaska 1995).

**40.** *See* AS 28.20.440(b); AS 28.22.101(d).

**41.** *See, e.g., Mayer v. Medical Malpractice Joint Underwriting Ass'n*, 40 Mass.App.Ct. 266, 663 N.E.2d 274, 276–79 (Mass.1996); *Runge v. Prairie States Ins.*, 393 N.W.2d 538, 542 (S.D.1986); *Nielsen v. O'Reilly*, 848 P.2d 664, 669–70 (Utah 1993); *Dairyland Ins. Co. v. Douthat*, 248 Va. 627, 449 S.E.2d 799, 801–02 (1994).