*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | Supreme Court Nos. S-17307/17610 |
| Appellant, | ) | (Consolidated) |
| | ) | |
| v. | ) | Superior Court No. 4FA-16-02769 CI |
| | ) | |
| NATHAN HARBOUR, | ) | O P I N I O N |
| | ) | |
| Appellee. | ) | No. 7545 – July 23, 2021 |
| | ) | |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Superior Court No. 4FA-17-01656 CI |
| | ) | |
| KENNETH N. MATTISON, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal in File No. S-17307 from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Douglas Blankenship, Judge. Appeal in File No. S-17610 from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Douglas Blankenship and Earl A. Peterson, Judges.

Appearances: Elizabeth Slattery and Alfred Clayton, Jr., Clayton & Diemer, LLC, Anchorage, for Appellant. Ward Merdes, Merdes Law Office, P.C., Fairbanks, for Appellees.

Before:  Bolger, Chief Justice, Winfree, Maassen, and Borghesan, Justices.  [Carney, Justice, not participating.]

WINFREE, Justice.

## I.      INTRODUCTION

The primary issue in these consolidated appeals is the scope of an automobile insurance policy's arbitration provision.  Two insureds with identical Allstate Insurance Company medical payments and uninsured/underinsured motorist (UIM) insurance coverage settled with their respective at-fault drivers for applicable liability insurance policy limits and then made medical payments and UIM benefits claims to Allstate.  Allstate and the insureds were unable to resolve the UIM claims and went to arbitration as the policy required.  The arbitration panels initially answered specific questions submitted about the insureds' accident-related damages.  At the insureds' requests but over Allstate's objections, the panels later calculated what the panels believed Allstate ultimately owed the insureds under their medical payments and UIM coverages and issued final awards.  Allstate filed superior court suits to confirm the initial damages calculations, reject the final awards as outside the arbitration panels' authority, and have the court determine the total amounts payable to the insureds under their policies.  The judge assigned to both suits affirmed the final arbitration awards; Allstate appealed both decisions, which we consolidated for consideration and decision.

Because the arbitration panels had no authority to determine anything beyond the insureds' damages arising from their accidents and because Allstate withheld its consent for the panels to determine anything else, we reverse the superior court's decisions and judgments.  We also reverse some aspects of the court's separate analysis and rulings on legal issues that the panels improperly decided.  Given (1) the arbitration panels' damages calculations and (2) our clarification of legal issues presented, we

remand for the superior court to determine the amount, if any, Allstate must pay each insured under their medical payments and UIM coverages.

## II. BASIC UIM CONCEPTS

Automobile liability insurers issuing bodily injury and death policies in Alaska must offer optional UIM coverage.[1] An underinsured motor vehicle is statutorily defined as having insurance policy liability limits that are less than the damages for bodily injury or death that an accident victim is legally entitled to recover from the vehicle's owner or operator.[2] In other words, UIM coverage insures against the risk that a liable motorist with no or insufficient liability insurance coverage may be unable to pay the insured's accident-related damages.

UIM coverage is excess coverage.[3] An insurer's maximum UIM liability

---

[1] AS 21.96.020(c) (requiring, in Title 21's regulation of insurance in Alaska, that automobile liability insurer for bodily injury and death offer UIM coverage at various policy limit options); AS 28.20.440(a)-(b) (setting out, in Alaska Motor Vehicles Safety Responsibility Act (AMVSRA), required provisions of motor vehicle liability policy, including that accompanying UIM coverage must not be below mandatory minimum for liability insurance); AS 28.20.445 (setting out, in AMVSRA, requirements for UIM coverage); AS 28.22.201-.231 (setting out, in Alaska Mandatory Automobile Insurance Act (AMAIA), additional UIM coverage provisions); *see generally Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 520-22 (Alaska 1998) (discussing interplay between Title 21, AMVSRA, and AMAIA). Insureds may waive UIM coverage in writing. AS 21.96.020(e); AS 28.22.201(a)(3); AS 28.20.445(e)(3).

[2] AS 28.90.990(30). The statute does not define "uninsured motor vehicle" but the term's meaning is clear from the context; it is a motor vehicle not covered by liability insurance to pay the damages that an accident victim is legally entitled to recover from the at-fault vehicle's owner or operator.

[3] AS 28.20.445(b) (providing UIM coverage is "excess to" amounts payable under automobile liability, medical payments, and workers' compensation coverages and "may not duplicate amounts paid or payable" under those coverages); *see generally*
(continued...)

is "the lesser of" (1) the difference between the insured's damages caused by an underinsured motorist and the amounts paid to the insured "by or for a person who is or may be held legally liable for the damages" or (2) the UIM coverage limits.[4]

The legislature has not barred insurers from including arbitration provisions in UIM coverage policies. But the legislature has mandated that UIM arbitration provisions provide that "all expenses and fees, not including counsel fees or adjuster fees, incurred because of arbitration or mediation shall be paid as determined by the arbitrator."[5]

## III. FACTS AND PROCEEDINGS

### A. The Insureds' Allstate Coverage

Allstate issued separate automobile insurance policies to Nathan Harbour and Kenneth Mattison. The policies have identical provisions for medical payments[6] and

---

[3] (...continued)
*Simmons*, 953 P.2d at 514-15 (discussing 1990 statutory change of UIM coverage from "reduction" framework, starting with UIM policy limits and reducing for all amounts paid or payable to insured from other sources, to an "excess" framework, compensating an insured when other recovery sources are exhausted but insured has remaining uncompensated damages); *Victor v. State Farm Fire & Cas. Co.*, 908 P.2d 1043, 1044 (Alaska 1996) (subtracting settlement with at-fault driver from insured's damages instead of reducing UIM policy limit to determine insurer's UIM liability).

[4] AS 28.20.445(a).

[5] AS 21.96.020(f)(1); *cf.* AS 09.43.480(b) (authorizing arbitrator to award attorney's fees and other arbitration expenses if otherwise allowed by law), .480(d) (authorizing arbitrator to order payment of arbitrator's fees and expenses, along with other expenses, in award).

[6] *See* 11 STEVEN PLITT ET. AL., *Couch on Insurance* § 158:1 (3rd ed. 2020):

Standard liability insurance policies . . . generally contain . . . provisions by which the insurer undertakes to pay up to a

(continued...)

UIM coverages. The medical payments coverage limit for each insured is $100,000 per person. The coverage contains a subrogation provision that if Allstate makes medical payments for an insured, the insured's "rights of recovery from anyone else become [Allstate's] up to the amount [Allstate has] paid."[7]

The UIM bodily injury coverage limit for each insured is $100,000 per person. The policies clarify that Allstate's UIM coverage is "excess" coverage, applying only "over and above" any amounts otherwise available to the insured, including from someone who is or may be legally liable for the insured's damages, liability insurance, workers' compensation insurance, and applicable medical payments insurance. The policies also clarify that "[i]n no event will an insured person be entitled to receive duplicate payments for the same elements of loss" and that Allstate has no obligation to pay any UIM benefits until all other insurance "ha[s] been used up by payments, judgments or settlements."

---

[6] (...continued)
 stated maximum amount for medical or funeral expenses incurred by persons injured or killed as a result of the condition or use of [an] . . . automobile. . . . A typical medical payments clause . . . states rather directly that the insurer will pay "reasonable" expenses paid for "necessary" medical and funeral services required because of "bodily injury" caused by an "accident" and sustained by the insured and/or other described persons.

 Allstate's medical payments coverage, in essence, provides that Allstate will pay a defined insured's medical bills arising from an accident up to a stated limit, sets time limitations for payable medical bills, and limits duplicate payments.

[7] *See Ruggles ex rel. Estate of Mayer v. Grow*, 984 P.2d 509, 512 (Alaska 1999) ("When an insurer pays expenses on behalf of an insured it is subrogated to the insured's claim. The insurer effectively receives an assignment of its expenditure by operation of law and contract.").

The UIM "Insuring Agreement" states that, excluding punitive damages, Allstate "will pay all damages" for bodily injury and property damage "that an insured person is legally entitled to recover from the owner or operator of an . . . underinsured auto." It then states that the "right to benefits and the amount payable will be decided by agreement between the insured person and **Allstate**" (bold text in original). A later "Limits of Liability" section sets out the statutory limit on contractual liability for "damages," i.e., the lesser of (1) the damages incurred minus all amounts paid to the insured on the at-fault driver's behalf or otherwise paid under medical payments and workers' compensation insurance or (2) the policy face limits for the UIM coverage. Particularly relevant to these appeals, the policy contains a provision requiring that, if the parties cannot resolve the UIM claim, they will arbitrate two issues: (1) the insured's "right to receive any damages" and (2) "the amount" of those damages. The arbitration provision, as required by statute, also provides that expenses and fees incurred during arbitration, except attorney's or adjuster's fees, shall be paid as the arbitrator determines.

B.      **The Insureds' Accidents And Settlements With At-Fault Drivers**

The insureds were injured in unrelated car accidents; the other drivers undisputedly were at fault. Allstate paid medical expenses of $21,784 for Harbour and $5,982.52 for Mattison under their medical payments coverages. Allstate sent each insured notice that it intended to negotiate its right of recovery with the responsible driver. Allstate later instructed the insureds that they were not authorized to pursue its subrogated claims.[8]

---

[8]      *See id*. ("If the insurer does not object, the insured may include the subrogated claim in its claim against a third-party tortfeasor. Any proceeds recovered must be paid to the insurer, less pro rata costs and fees incurred by the insured in prosecuting and collecting the claim. But the subrogated claim belongs to the insurer. The insurer may pursue a direct action against the tortfeasor, discount and settle its claim,
(continued...)

The insureds settled with the at-fault motorists for their respective liability insurance policy limits. Harbour received policy limits of $100,000 plus additional available amounts for prejudgment interest, attorney's fees, and costs, for a total of $121,407.96. Mattison received policy limits of $100,000, but prejudgment interest was unavailable under the at-fault driver's liability insurance policy; Mattison did not seek attorney's fees and costs available under the liability policy.

The insureds, represented by the same attorney, then submitted claims to Allstate for medical payments and UIM benefits.

## C.      Arbitrations

The insureds' claims could not be resolved and were submitted to arbitrations pursuant to Allstate's UIM arbitration provision. The arbitration panels, with two members in common, issued similar prehearing orders expressly limiting the arbitration's scope to: (1) whether the insured had a right to receive damages from the at-fault driver; (2) the amount of such damages; and (3) the allocation of arbitration fees and expenses.

### 1.      Harbour's arbitration

Harbour's arbitration panel initially determined that he incurred $93,797 in damages as a result of his accident, including $16,743 in medical bills not already paid by Allstate under his medical payments coverage.[9] The panel expressly excluded from its damages calculation the $21,784 Allstate already had provided under Harbour's

---

[8]      (...continued) or determine that the claim should not be pursued.").

[9]      The arbitration panel also concluded, apparently based on Allstate's medical payments coverage, that Harbour's future medical bills attributable to the accident "[s]hall be paid [by Allstate] to the extent they are incurred as recommended" by Harbour's doctor, "limited to [five] years from the date of loss."

medical payments coverage. This presumably reflected either (1) the panel's recognition that UIM coverage is excess to medical payments coverage or (2) that Harbour was not entitled to recover Allstate's subrogated claim from the at-fault driver. But the panel did not differentiate between Harbour's medical payments and UIM coverages when it included as damages the $16,743 in medical bills not already paid by Allstate.

During the arbitration Harbour had asked the panel to award prejudgment interest, attorney's fees, and costs based on the damages amount. Allstate asserted that these matters were outside the arbitration's scope and did not consent to their arbitration. The panel initially did not address Harbour's request but stated that either party could ask the panel to resolve future disputes about Allstate's ultimate liability to Harbour, including how to address the offset for his prior recovery from the at-fault driver's liability insurance coverage. The panel ordered Allstate to pay all arbitration costs.

Allstate and Harbour disagreed on the amount Allstate owed Harbour. Harbour contended he was owed nearly $25,000 in policy benefits. Allstate contended that Harbour was not entitled to UIM benefits because the at-fault driver was not an underinsured motorist; in the initial settlement the at-fault driver's liability insurer had paid more in damages ($100,000 face amount before add-ons for prejudgment interest, attorney's fees, and costs) than what the arbitration panel had determined was legally recoverable from the at-fault driver ($93,797 before add-ons). Allstate also contended that it was entitled to payment from the "excess" settlement funds to at least partially satisfy its subrogated claim for the $21,784 paid under Harbour's medical payments coverage. Allstate agreed that its subrogated claim should be reduced by a pro rata share of Harbour's attorney's fees incurred in recovering this portion of the medical payments from the at-fault driver.

Harbour asked the arbitration panel to clarify the initial award and enter a final award recalculating his damages by including: Allstate's subrogated medical

payment claim in his UIM damages; costs, prejudgment interest, and attorney's fees based on the damages award; and a pro rata share of his attorney's fees incurred obtaining the settlement with the at-fault driver's insurer. Pro rata fees in this context would be 100% under the theory that the settlement benefitted only Allstate by giving it an offset against UIM damages. Allstate repeatedly objected that revisiting the award exceeded the panel's authority; it filed a superior court complaint to confirm the initial award. To avoid consenting to the panel's expanded authority, Allstate did not respond to the merits of Harbour's additional claims.

The arbitration panel increased the award almost entirely as Harbour requested. The panel determined that Allstate should reimburse Harbour the $41,243.61 in attorney's fees and costs he incurred obtaining the settlement from the at-fault driver's insurer and that it should pay interest and attorney's fees on the net damages amounts. The panel's final judgment was that Allstate owed Harbour $39,206.13. The panel expressly rejected Allstate's contention that the panel had no authority to determine Allstate's ultimate contractual obligation to Harbour, stating that the arbitration provision submitted "the damages issues in this matter" to arbitration. One panel member dissented, agreeing with Allstate that the panel had no authority to determine Allstate's ultimate contractual obligation to Harbour.

### 2. Mattison's arbitration

Mattison's arbitration panel determined that he incurred $145,486 in damages as a result of his accident. The panel itemized $32,891 of the damages as past medical bills. But the panel did not reference the $5,982.52 in medical payments Allstate already had made on Mattison's behalf or Allstate's assertion that Mattison had no authority to pursue recovery of its subrogated claim.

Mattison then asked the panel to award additional amounts for prejudgment interest, attorney's fees, and costs based on the damages amount. Allstate asserted that

these matters were outside the arbitration's scope, and it did not consent to their arbitration. The panel initially did not address the matter, but, as in the Harbour arbitration, the panel stated that either party could ask the panel to resolve future disputes about Allstate's ultimate liability to Mattison. The panel ordered Allstate to pay all arbitration costs.

Allstate and Mattison disagreed on the amount Allstate owed Mattison. Mattison asked the arbitration panel to adjudicate his unresolved claims for interest, attorney's fees, costs, and a pro rata share of attorney's fees incurred to secure his settlement. Because interest had undisputedly not been available under the uninsured motorist's liability coverage, Mattison also requested interest on his settlement with the underinsured motorist. Allstate opposed Mattison's request, arguing, as it had in Harbour's matter, that the panel did not have authority to determine Allstate's ultimate contractual liability. Allstate filed a superior court complaint to confirm the initial award.

The arbitration panel issued a final decision, rejecting Allstate's contention that the panel had no authority to decide anything beyond the specific questions set out in the pre-arbitration order. The panel ordered Allstate to reimburse Mattison's attorney's fees and costs, totaling just under $35,000, incurred in obtaining the settlement with the at-fault driver. The panel rejected Mattison's request for attorney's fees based on the damages determination because he had failed to obtain available attorney's fees coverage from the at-fault driver's liability insurance. But the panel decided that Mattison was entitled to interest on the damages, including the attorney's fees awarded for his efforts to collect from the at-fault driver. The final amount payable to Mattison was $90,123.62. One panel member dissented, agreeing with Allstate that the panel did not have authority to determine Allstate's ultimate contractual obligation to Mattison.

**D.     Superior Court Proceedings**

Shortly after the arbitration panels issued their initial determinations, but before the objected-to second rounds of arbitration proceedings, Allstate filed complaints asking the superior court to confirm the initial damages determinations and then decide Allstate's ultimate contractual obligation to the insureds.  After the panels issued their final decisions, Allstate amended its complaints to seek relief vacating those decisions. The same superior court judge was assigned the two cases, and the court consolidated them for hearing but not for decision.[10] The court ultimately confirmed both final awards on summary judgment,[11] deciding Harbour's case first, then citing that decision in Mattison's case.

The superior court recognized that arbitrability is a matter for the court to decide but held that the panels had authority to issue the expanded final awards.  The court suggested that the panels' authority "likely expanded" when the insureds submitted the additional issues to the panels, and the court cited case law "suggest[ing]" that when an arbitration panel is asked to decide a party's "total damages from a tortfeasor" it also may consider "amounts payable under the insurance policy."  The court concluded that the panels' consideration of payments related to, but beyond, the "damages" the at-fault drivers owed was "reasonable."  The court then concluded that the panels' decisions did not otherwise violate law.

---

[10]     Superior Court Judge Douglas Blankenship heard and decided Harbour's case.  Judge Blankenship also heard Mattison's case and wrote the decision at issue in this appeal; before all pending issues were resolved Judge Blankenship retired, and Mattison's case was reassigned to Judge Earl A. Peterson.

[11]     *See* Alaska R. Civ. P. 56(c) (providing party is entitled to summary judgment if there is no genuine issue of material fact and party is entitled to judgment as matter of law on undisputed facts).

Allstate appealed both superior court decisions, and we consolidated the appeals for consideration and decision.

## IV. STANDARD OF REVIEW

We review grants of summary judgment de novo "and will affirm if there are no genuine issues of material fact and the winning party was entitled to judgment as a matter of law."[12] We review "a superior court's review of an arbitration decision de novo when it deals with questions of law and contract interpretation."[13] "Whether a dispute is arbitrable and whether a superior court's decision to affirm an arbitration award is correct are both questions of law . . . review[ed] de novo."[14] But an "arbitrator's legal conclusions are . . . unreviewable, except where they pertain to arbitrability."[15]

## V. DISCUSSION

### A. The Panels Exceeded Their Arbitration Authority By Deciding Issues That Allstate Did Not Agree To Arbitrate.

Arbitration clauses are creatures of contract,[16] and "a party cannot be required to submit to arbitration any dispute which [the party] had not agreed" to submit.[17] Courts "decide whether . . . a controversy is subject to an agreement to

---

[12] *Sidney v. Allstate Ins. Co.*, 187 P.3d 443, 447 (Alaska 2008).

[13] *Id.* (emphasis omitted).

[14] *Id.* at 447-48 (emphasis and citations omitted).

[15] *Kinn v. Alaska Sales & Serv., Inc.*, 144 P.3d 474, 487 (Alaska 2006).

[16] *Geotek Alaska, Inc. v. Jacobs Eng'g Grp., Inc.*, 354 P.3d 368, 374 (Alaska 2015).

[17] *Id.* (quoting *Classified Emps. Ass'n v. Matanuska-Susitna Borough Sch. Dist.*, 204 P.3d 347, 353 (Alaska 2009)).

arbitrate."[18] But if interpretation of other contract provisions is necessary to determine whether a claim fits within the contract's arbitration clause, the arbitrator's contract interpretation is given due weight if the parties did not seek a pre-arbitration ruling on arbitrability.[19] For example, when a construction contract's arbitration clause authorized arbitrators to decide "[a]ll claims, disputes and other matters arising out of or relating to" the contract, we said that this "necessarily gave the arbitrators power to interpret the contract[;] otherwise it would have been impossible for them to determine which claims or disputes they could properly arbitrate."[20] We said the later reviewing court then was limited to determining

> . . . whether the construction of the contract made by the arbitrator[s] is a reasonably possible one that can seriously be made in the context in which the contract was made. Stated affirmatively, if all fair and reasonable minds would agree that the construction of the contract made by the arbitrator[s] was not possible under a fair interpretation of the contract, then the court would be bound to vacate or refuse to confirm the award. [21]

---

[18]     AS 09.43.330(c). Contracting parties may delegate to an arbiter the authority to resolve questions of arbitrability, but they must do so "clearly and unmistakably." *Lexington Mktg. Grp. v. Goldbelt Eagle LLC*, 157 P.3d 470, 473 (Alaska 2007). Allstate's policies in this matter do not address the forum for resolving questions of arbitrability and therefore do not "clearly and unmistakably" delegate such authority. *See id.* ("Because the arbitration clause . . . is silent on the proper forum to decide arbitrability, it does not 'clearly and unmistakably' rebut the presumption that the courts decide whether a dispute is arbitrable under the terms of the agreement.").

[19]     *Univ. of Alaska v. Modern Constr., Inc.*, 522 P.2d 1132, 1136-39 (Alaska 1974).

[20]     *Id.* at 1137 (first alteration in original).

[21]     *Id.* (alterations in original) (quoting Pirsig, *Some Comments on Arbitration*
(continued...)

-13-                                                                   **7545**

We concluded that the arbitrators' decision, that the contractor could assert a claim for " 'impact' damages" arising from the project owner's project delays despite no mention of impact damages in the contract, "was not based upon an unreasonable interpretation of the contract" and the claim therefore was arbitrable.[22]

Harbour's and Mattison's arbitration panels concluded that they had authority to determine the total amounts payable under the insureds' coverages despite their pre-arbitration orders expressly limiting the arbitrations' scope to: (1) whether the insured had a right to recover damages from the at-fault driver; (2) the amount of such damages; and (3) the allocation of arbitrable fees and expenses. The superior court agreed, concluding that the panels' authority "likely expanded" to include total amounts payable when the insureds asked the panels to determine Allstate's ultimate liability under the coverages. But Allstate did not consent to expanding arbitration authority; to the contrary, it repeatedly and affirmatively withheld consent. The panels therefore had no authority to determine the total benefit amounts payable under the policies unless that authority can be found or implied by law in the arbitration provision; we conclude that it cannot.

Because the parties did not delegate to the arbitration panels the authority to resolve questions of arbitrability, the arbitration panels were bound by applicable law

---

[21]    (...continued)
*Legislation and the Uniform Act*, 10 VAND.L.REV. 685, 706 (1957)).

[22]    *Id.* at 1138; *accord Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 660-63 (Alaska 1995); *see also Classified Emps. Ass'n v. Matanuska-Susitna Borough Sch. Dist.*, 204 P.3d 347, 352-59 (Alaska 2009) (applying same analysis to superior court's pre-arbitration ruling on arbitrability of union grievance by determining whether asserted claims fell within contract definition of "grievance" subject to arbitration).

in determining the scope of their authority.[23]  This includes precedent stating that we interpret insurance contracts by looking to:  (1) the policy language; (2) other provisions in the policy; (3) extrinsic evidence; and (4) "case law interpreting similar provisions."[24] The specific question before us is whether, given the arbitration clause's limitation to "damages" determinations, the arbitration panels reasonably could interpret "damages" to include not only damages legally caused by the at-fault drivers, but also the benefits ultimately payable under the insureds' insurance policies.

Context always is key.  The arbitration clause is not an expansive provision covering any and all claims arising out of or related to Allstate's insurance policy (or even the UIM coverage).  The parties were following a dispute resolution process unrelated to a breach of contract damages claim under Allstate's policy.  The primary factor of any UIM claim is determining the damages the insured would be legally entitled to recover from the at-fault uninsured or underinsured motorist.  Once those damages are determined as a matter of fact, Allstate and its insured should be in a position to calculate, based on policy language and controlling law, what Allstate owes under its coverage.

Our analysis thus begins with the relevant portions of Allstate's UIM coverage language:

---

[23]    *See* AS 09.43.330(c) ("The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."); *Lexington Mktg. Grp.*, 157 P.3d at 473 (requiring "clear[] and unmistakabl[e]" delegation of authority to resolve questions of arbitrability); *cf. Modern Constr.*, 522 P.2d at 1140 ("The general rule . . . is that arbitrators need not follow otherwise applicable law when deciding issues *properly before them*." (emphasis added)).

[24]    *Hahn v. GEICO Choice Ins. Co.*, 420 P.3d 1160, 1170 (Alaska 2018).

**Insuring Agreement**

[**Allstate**] will pay all *damages*, other than punitive or exemplary damages, that an insured person is legally entitled to recover from the owner or operator of an uninsured or underinsured auto because of:

1.  **bodily injury** sustained by an insured person . . . .

    The **bodily injury** . . . must be caused by accident and arise out of the ownership, maintenance or use of an uninsured or underinsured auto. The right to *benefits and the amount payable* will be decided by agreement between the insured person and **Allstate**.

    . . . .

**Limits of Liability**

1.  The coverage limit shown on the Policy Declarations for:

    a)  "each person" is the maximum that **we** will pay for all *damages* arising out of **bodily injury** to one person in any one **motor vehicle** accident . . . .

    . . . .

3.  Subject to this maximum, [**Allstate's**] limit of liability will be the lesser of:

    a)  The difference between the amount of an insured person's *damages* for **bodily injury** . . . and the amount paid to that insured person for such *damages*, by or for a person who is or may be held legally liable for *damages*, including all sums paid under [this policy's liability coverage]; and

    b)  The applicable limit of liability for this coverage.

4.  *Any amounts otherwise payable for damages* under

this coverage shall apply over and above any amounts available to the insured person because of the **bodily injury**:

a)    By or for a person who is or may be held legally liable for damages.  This includes all sums paid under [this policy's liability coverage].

b)    Under any of the following:

i.    Workers' compensation law; or

ii.    Automobile medical payments coverage.

. . . .

5.    [**Allstate** is] not obligated to make *any payment* for **bodily injury** . . . under this coverage until the limits of liability of all bodily injury . . . liability bonds and policies that apply have been used up by payments, judgments or settlements.

. . . .

**If We Cannot Agree**

If the insured person or [**Allstate**] don't agree on that person's *right to receive any damages or the amount*, then at the written request of either, the disagreement will be settled by arbitration.  (Emphasis added; bold text in original.)

The text of Allstate's UIM coverage establishes that damages caused by an underinsured motorist are distinct from benefits ultimately payable under the UIM coverage.  The first paragraph of Allstate's UIM Insuring Agreement obligates Allstate to pay "all damages . . . that an insured person is legally entitled to recover from the owner or operator of an uninsured or underinsured auto."  But the UIM Insuring Agreement then discusses an insured's ultimate "right to benefits and the amount payable" under the coverage.  The policy distinguishes between damages and benefit amounts payable because Allstate's UIM coverage, by law and by contract language

limiting Allstate's UIM liability, is excess coverage.[25] UIM coverage begins only after an insured exhausts recovery from all other available sources, such as an at-fault driver's liability coverage, the insured's medical payments coverage, and any applicable workers' compensation payments.[26] The insurance policy refers to the amount an insured person would have been legally entitled to recover from an at-fault driver as "damages"; it refers to what the insured is entitled to recover from Allstate as "amount payable," a sum that may differ from an insured's damages due to alternative recovery sources and add-ons allowed by the policy.[27]

In *State Farm Mutual Automobile Insurance Co. v. Dowdy* we discussed a similar UIM arbitration clause committing to arbitration two questions: "(1) 'Is the insured legally entitled to collect damages from the owner or driver of the uninsured

---

[25]     AS 28.20.445(b) (defining UIM coverage as "excess" coverage); *see Sidney v. Allstate Ins. Co.*, 187 P.3d 443, 448 (Alaska 2008) ("In 1990 Alaska adopted an 'excess' coverage approach to underinsured motorist insurance."); *State Farm Mut. Auto. Ins. Co. v. Wilson*, 199 P.3d 581, 584-85 (Alaska 2008) ("The new statutory system, referred to as an 'excess' approach, still sought to ensure that UIM coverage was secondary to other sources of coverage and that it not be available to make duplicative payments."); *Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 514-15 (Alaska 1998) (discussing UIM coverage "excess" framework).

[26]     *See* AS 28.20.445(b); *Coughlin v. GEICO*, 69 P.3d 986, 992 (Alaska 2003) ("[P]olicy limits are exhausted when the face value of the policy is paid to the insured; any payment or non-payment of attorney's fees and prejudgment interest is independent of this determination.").

[27]     Although "[a]mbiguities in . . . insurance policies are . . . construed most favorably to an insured, . . . ambiguities . . . exist [only] when there are two or more reasonable interpretations of particular policy language." *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008). We conclude there is no ambiguity in distinguishing between "damages" and "amount payable" in the contract provisions at issue.

vehicle . . .'; and (2) 'if so, in what amount?' "[28] We concluded that "by focusing on the insured's right to 'collect damages from the owner or driver[,]' . . . the arbitration clause unambiguously exclude[d] questions relating solely to the right to collect from the insurer."[29] Although Allstate's UIM arbitration provision does not use the phrase "from the owner or driver of the uninsured motor vehicle," Allstate's UIM Insuring Agreement and related provisions establish that damages are distinct from amounts payable by using the terms to refer to necessarily different sums. Allstate's UIM arbitration provision — discussing only damages — thus excludes from arbitration questions relating solely to the insureds' rights to collect benefit amounts from Allstate, as in *Dowdy*.

The insureds argue that the arbitration panels' interpretations of Allstate's UIM arbitration clause (and therefore the scope of the panels' authority) were reasonable, but they misinterpret our precedent involving broader arbitration clauses. For example, in *Johnson v. Aleut Corp.* an arbitrator's capacious interpretation of questions presented for arbitration was reasonable in light of a broad arbitration clause committing to arbitration "[a]ny and all disputes . . . arising out of, relating in any way to or in connection with" an employment agreement.[30] And in *Wing v. GEICO Insurance Co.* we concluded that the UIM arbitration panel could consider issues of costs, fees, and offsets (i.e. amounts payable under the UIM coverage) because the arbitration clause granted the panel authority "to determine 'the amount payable' under the policy."[31] But Allstate's current UIM arbitration clause is narrower than those in *Johnson* and *Wing*, explicitly committing only two discrete issues to arbitration: an insured's right to receive

---

[28]     111 P.3d 337, 338 (Alaska 2005).

[29]     *Id.* at 341 (emphases omitted).

[30]     307 P.3d 942, 944 (Alaska 2013).

[31]     17 P.3d 783, 786-87 (Alaska 2001).

damages from an at-fault driver and the amount of those damages.

The insureds, the arbitration panels, and the superior court all mistakenly relied on *Sidney v. Allstate Insurance Co.* to support their conclusions that the panels' interpretations of their arbitration authority were reasonable.[32] Allstate's policy in *Sidney* included two separate arbitration clauses; one permitted arbitration of the insured's "right to receive any damages [from the at-fault driver] or the amount" and the other permitted arbitration of the insured's "right to [UIM] benefits and the amount payable."[33] We concluded that the two arbitration provisions granted the arbitration panel authority to determine "two different and distinct concepts: (1) the total amount of damages to which an insured is entitled (from the tortfeasor) *and* (2) amounts payable under the insurance policy (by the UIM insurer)."[34] The superior court affirmed the Mattison arbitration panel's determinations of its authority, stating that "the policy language in *Sidney* is identical to the policy language [in Mattison's policies]," but the policy language is not identical. The Allstate policies lack the language that granted the *Sidney* arbitration panel authority to arbitrate the insured's "right to [UIM] benefits and the amount payable." In light of this difference, the panels' and the superior court's reliance on *Sidney* was not reasonable.[35]

The insureds, the panels, and the superior court are correct that arbitration panels have the implied authority to determine issues not explicitly committed to

---

[32]    187 P.3d 443 (Alaska 2008).

[33]    *Id.* at 449 & n.29 (emphasis omitted) (construing *Zimmerman v. Ill. Farmers' Ins. Co.*, 739 N.E.2d 990, 995 (2000 Ill. App.) as "discussing distinction between damages and payment and noting insured entitled to 'damages' from tortfeasor, but 'payment' from UIM insurer").

[34]    *Id.* (emphasis in original).

[35]    *See id.*

arbitration if the issues are "inextricably intertwined" with the issues committed to arbitration.[36]  But a facially non-arbitrable issue is inextricably intertwined with an arbitrable issue only if resolution of the arbitrable issue will "necessarily resolve" the facially non-arbitrable issue.[37]  A determination of an insured's underlying damages does not, alone, necessarily resolve the benefit amounts payable under specific coverages. The benefit amounts payable under UIM coverage depends upon the underlying damages, available alternative recovery sources that must be exhausted to trigger the UIM coverage, and the UIM coverage's specific terms.  An underlying damages determination therefore does not "necessarily resolve" an amounts payable determination.[38]

The arbitration panels exceeded their authority by purporting to determine the total benefit amounts Allstate owed the insureds under their coverages; the panels had authority to determine only each insured's damages arising from the at-fault driver's conduct.  Only a court, not an arbitration panel, may determine whether the insureds are entitled to:  prejudgment interest on Allstate's liability to the insureds,[39] Alaska Civil

---

[36]   *State Farm Mut. Auto Ins. Co. v. Dowdy*, 111 P.3d 337, 342-43 (Alaska 2005).

[37]   *Id.*

[38]   *See id.* at 343.

[39]   *See Sidney*, 187 P.3d at 451-53 (concluding UIM insurer not liable for prejudgment interest after arbitration decision); *Farquhar v. Alaska Nat'l Ins. Co.*, 20 P.3d 577, 579-81 (Alaska 2001) (deciding whether insurance policy covered prejudgment interest); *State Farm Mut. Auto Ins. Co. v. Harrington*, 918 P.2d 1022, 1023 (Alaska 1996) (discussing superior court prejudgment interest award under UIM policy).

Rule 82 attorney's fees,[40] and pro rata attorney's fees for subrogated claims.[41] It was legal error to affirm the panels' determinations of their arbitration authority.

**B.     The Superior Court Decisions Must Be Vacated.**

After affirming the arbitration panels' determinations of their arbitration authority, the superior court addressed the panels' legal justifications for determining Allstate's total UIM liability. One significant legal determination — that Allstate must pay the insureds' attorney's fees and costs incurred to obtain the underlying policy limits settlements with the at-fault drivers — clearly was wrong. And at least two other significant legal determinations — regarding the interplay between Allstate's medical payments and UIM coverages and the availability of prejudgment interest on damages underlying UIM benefit payments — appear to have been affirmed not by applying the court's independent judgment but with deference to the arbitration panels' legal analyses.[42]

---

[40]     *See Sidney*, 187 P.3d at 456 (awarding Rule 82 attorney's fees on UIM benefits after arbitration award); *Progressive Corp. v. Peter*, 195 P.3d 1083, 1094-95 (Alaska 2008) (deciding whether UIM insurer owed Rule 82 attorney's fees); *State Farm Mut. Auto. Ins. Co. v. Lestenkof*, 155 P.3d 313, 316-18 (Alaska 2007) (deciding whether UIM insurer owed Rule 82 attorney's fees).

[41]     *See O'Donnell v. Johnson*, 209 P.3d 128, 134-35 (Alaska 2009) (deciding whether insured created common fund); *Sidney*, 187 P.3d at 454 (awarding pro rata fees after arbitration for insured's recovery of UIM insurer's subrogated medical payments claim from at-fault driver).

[42]     An "arbitrator's legal conclusions are . . . unreviewable, except where they pertain to arbitrability." *Kinn v. Alaska Sales & Serv., Inc.*, 144 P.3d 474, 487 (Alaska 2006). But because we hold that the panels exceeded their authority in issuing the final awards, the superior court should have applied its independent judgment to resolve the remaining legal issues.

1. **UIM insurers are not required to reimburse insureds for attorney's fees and costs incurred in exhausting at-fault drivers' liability insurance coverage underlying UIM excess insurance coverage.**

It was error to independently adopt the arbitration panels' mistaken legal conclusions that the insureds' settlements with the at-fault parties' insurers provided common fund benefits requiring Allstate to pay a pro rata share of the insureds' attorney's fees and costs incurred in obtaining the settlements. As noted above, in this context "pro rata" would mean 100% of the fees incurred to obtain the policy limits settlements. But, with the possible exception of subrogated medical payments claims discussed in the next section, the insureds' policy limits settlements did not directly benefit Allstate and thus do not constitute common fund benefits.

The common fund doctrine provides that "a litigant . . . who recovers a common fund for the benefit of persons other than himself . . . is entitled to a reasonable attorney's fee from the fund as a whole."[43] In *Ruggles v. Grow* we implicitly applied the doctrine to conclude that when an insured recovers an insurer's subrogated medical payments claim from a third-party in a tort suit, the "proceeds recovered must be paid to the insurer, less pro rata costs and fees."[44] We extended the doctrine in *Sidney* to conclude that an insured is entitled to pro rata fees upon recovering a subrogated medical

---

[43]     *Edwards v. Alaska Pulp Corp.*, 920 P.2d 751, 754 (Alaska 1996) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *see O'Donnell* 209 P.3d at 135 ("[T]he elements of a common fund recovery under Alaska law are (1) the efforts of one party (2) result in the creation of a fund benefitting a third party (3) who is benefitted in a clear and well-defined manner, and (4) the third party is ready and willing to accept the benefits so obtained.").

[44]     984 P.2d 509, 512 (Alaska 1999).

payments claim through settlement, not just litigation.[45]  In both *Ruggles* and *Sidney* the insureds procured a "direct benefit" for the insurers by securing satisfaction of claims their insurers held.[46]

The insureds mistakenly argue that they secured a direct benefit for Allstate by settling with the at-fault parties because "Allstate seeks to net 100% of that liability recovery against its UIM obligation to [the insureds]." But that argument fundamentally mischaracterizes excess insurance coverage.  Allstate's UIM liability necessarily cannot begin until an insured exhausts all other potential payment sources for damages arising from an accident.[47]  Allstate was not liable to the insureds for amounts payable to them by the at-fault drivers' liability insurance coverage, and Allstate did not have a claim against the at-fault drivers beyond its subrogated claim for medical payments to the insureds.  Securing the settlements thus did not create a common fund or otherwise provide Allstate any direct benefit beyond the subrogated medical payment claims.

*Sidney* clarifies this point.  In *Sidney* Allstate paid an insured's medical bills under the medical payments coverage.[48]  Allstate thus became subrogated to the insured's claims against third parties for the medical bills; Allstate, not the insured, was legally entitled to any payment from liable third parties for the insured's medical bills that

---

[45]    187 P.3d at 455.

[46]    *Id.* at 453-54; *Ruggles*, 984 P.2d at 512; *see O'Donnell*, 209 P.3d at 134 (requiring "well-defined benefits" to third party for creation of common fund).

[47]    *See* AS 28.20.445(b); *Curran v. Progressive Nw. Ins. Co.*, 29 P.3d 829, 833 (Alaska 2001) (stating that "UIM claimant [must] 'exhaust' or 'use up' all underlying liability coverage before recovering under [the] UIM policy").

[48]    187 P.3d at 446.

Allstate already had paid.[49] As part of the insured's settlement with the at-fault driver's insurance company, the insurance company agreed to satisfy Allstate's subrogated claim.[50] The *Sidney* insured thus recovered a direct benefit for Allstate by securing satisfaction of its subrogated claim, to which the insured held no legal interest. But in the cases now before us, except as contemplated below with respect to Allstate's subrogated medical payments claims, all of the settlement money went directly to the insureds. This case thus differs from *Sidney*.

The common fund doctrine was misapplied by the superior court. The insureds are not entitled to a 100% "pro rata" share of attorney's fees incurred in obtaining their policy limits settlements with the at-fault drivers' insurance companies.

**2.     The arbitration panels' treatment of Allstate's subrogated medical payments claims, and thus the superior court's affirmance, are unclear**.

Allstate had paid $21,784 of Harbour's medical bills and $5,982.52 of Mattison's medical bills under their medical payments coverages. Allstate claimed ownership of its subrogated claims by providing notice to the insureds that it intended to negotiate its right of recovery directly with the responsible parties. The insureds disputed the validity of Allstate's directive not to recover the subrogated claims. The arbitration panels made no findings about Allstate's subrogated claims or its directives to the insureds, instead awarding pro rata fees based on the entire settlement.

Because we hold that it was improper to award pro rata attorney's fees on the entire settlement, the superior court must determine on remand whether the insureds recovered any portion of Allstate's subrogated claims, in which case they would be entitled to recover pro rata fees only on the portion of the settlement dedicated to

---

[49]     *Id.* at 451, 454.

[50]     *Id.* at 451.

satisfying Allstate's subrogated claims.[51]  Allstate apparently conceded that it may owe Harbour some pro rata fees, stating in a letter that "Harbour is entitled to a pro rata reduction . . . for the costs and attorney's fees he incurred to recover on Allstate's subrogated medical payments claim."  Absent further development of the record and factual findings, it is unclear how to resolve this issue in Mattison's case.

### 3.     The superior court must independently determine if Mattison is entitled to prejudgment interest on the damages award.

Mattison's settlement with the at-fault driver undisputedly did not include prejudgment interest because it was not available as an add-on above the policy limit under the at-fault driver's liability coverage.  He therefore asked the arbitration panel to hold Allstate liable for prejudgment interest on the underlying settlement under his UIM coverage.  But determining Allstate's liability for prejudgment interest on the underlying settlement requires determining Allstate's contractual liability, and, as discussed above, that was not submitted to arbitration.  The panel exceeded its authority in awarding Mattison prejudgment interest.  The superior court apparently affirmed the award by deferring to the panel's legal analysis of the issue instead of applying its independent judgment; this was error.

The arbitration panel relied on *Farquhar v. Alaska National Insurance Co.*[52] and *Sidney*[53] to conclude that Allstate was liable for prejudgment interest on the settlement amount.  In *Farquhar* we discussed only two grounds for holding the UIM

---

[51]     *See id.* at 453-54; *cf. O'Donnell*, 209 P.3d at 135 ("If the insurer actively requests that the plaintiff not pursue her subrogation claim, there is no common fund because the insurer will not be collecting the lien from the plaintiff's recovery fund but will seek its own recovery.").

[52]     20 P.3d 577 (Alaska 2001).

[53]     187 P.3d at 443.

insurer liable for prejudgment interest: (1) "if the insurer contractually assumes liability by the terms of its policy" and (2) "if public policy requires liability despite the language of the contract."[54] The insurance policy in *Farquhar* did not explicitly state whether the insurer was liable for prejudgment interest beyond the policy limit, suggesting that it was not.[55] And we rejected the argument that an insurer is liable for any add-on fees not expressly excluded by a coverage.[56] We ultimately held that an insurer is not automatically required to pay add-ons, such as prejudgment interest, above a facial policy limit that is greater than the statutory minimum.[57]

In *Sidney* we held that when an insured is able to pursue an add-on from an at-fault driver's insurance but does not, the insured waives the right to claim a similar add-on from the insured's UIM coverage provider.[58] To award prejudgment interest, the Mattison arbitration panel implicitly reasoned that the inverse was true: When an insured is unable to pursue an add-on from an at-fault driver's insurance, the insured may claim a similar add-on from the insured's UIM coverage provider.

The superior court's basis for affirmance is unclear. The court called the Mattison arbitration panel's interpretation of *Farquhar* "arguably questionable" but found "no reason to modify or vacate the arbitration panel's decision under the law" and noted that "Allstate fail[ed] to point to any contractual language . . . to suggest . . . that Allstate was not obligated to pay any interest." Because the arbitration panel exceeded

---

[54]   20 P.3d at 578.

[55]   *Id.* at 579.

[56]   *Id.* at 580.

[57]   *Id.* at 583.

[58]   187 P.3d at 451-53.

the scope of its authority in awarding prejudgment interest, the court was required to apply its independent judgment to the issue. It therefore was error to afford any deference to the arbitration panel's "arguably questionable" analysis. On remand the court must independently determine whether Allstate is contractually liable for the prejudgment interest Mattison claims.

## VI. CONCLUSION

The superior court's judgments are REVERSED. We REMAND for the superior court to determine what amounts, if any, Allstate owes the insureds under their policies in light of the arbitration determinations of the insureds' damages caused by the at-fault drivers.